UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ANDREW THREATT #247178,

        Plaintiff,        Case No. 2:10-cv-13

v.        Honorable Robert Holmes Bell

D. OLGER, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. **The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee.** Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I. Factual allegations

Plaintiff Andrew Threatt #247178, an inmate at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Property Room Supervisor D. Olger, Warden David Bergh, Assistant Resident Unit Supervisor K. Costello, Assistant Resident Unit Supervisor Thomas Salo, Resident Unit Manager Curt Rife, Captain J. Contreras, Case Manager P. Carberry, Assistant Resident Unit Supervisor Robert Johnson, Corrections Officer Unknown Suardini, Inspector Lyle Rutter, Doctor Fernando Fontera, Nurse Practitioner Unknown Scott, Nurse Practitioner Unknown Galloway, Health Unit Manager Rudy Cheatum, Health Unit Manager Gloria Hill, Health Unit Manager Mark West, Doctor Dune Hansen, Doctor Unknown Vanlandschoot, Health Care Unit Manager Larry Hill, Doctor Unknown Engelsgjerd, Doctor Richard Miles, Physician's Assistant John Kimsell, R.N. Supervisor Marie Jordan, Region I Health Care Supervisor Jeannie Stephenson, R.N. Supervisor D. Guinn, Unknown R.N. Jane Doe, Deputy Warden Robert Napels, Resident Unit Manager Unknown Govern, Administrative Assistant James Armstrong, Warden Gerald Hofbauer, Assistant Warden Jim Alexander, and Shannon Montigomery, R.N. Plaintiff states that he is suing the Defendants in their individual capacities. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

In his complaint, Plaintiff alleges that on September 30, 2005, a hearing was conducted on an envelope containing Uniform Commercial Code (UCC) documents that had been confiscated. Plaintiff claims that he was planning to use these documents as evidence in a civil rights action against Corrections Officers. The documents were subsequently destroyed, which

prevented Plaintiff from filing the civil rights action. At the hearing, Defendant Carberry determined that the documents would be destroyed without giving Plaintiff the opportunity to send the documents to an outside party, stating:

> Per PD 05.03.118 W5: Destroyed, except that a publication or photograph shall be destroyed if the prisoner agrees or as allowed pursuant to number 1 through 3. This is not a publication or photograph so it can be destroyed.

(Plaintiff's Exhibit A.) Plaintiff asserts that there is no "W5" section in the above policy and that Defendant Carberry must have been referring to "VV5," and that Defendant Carberry twisted the language of the policy in order to allow him to have Plaintiff's property destroyed.

Plaintiff claims that on September 10, 2006, his cell was shaken down and his personal and legal property was confiscated by Defendant Suardini in order to prevent Plaintiff from completing a civil rights complaint naming Defendant Suardini's co-workers. Plaintiff received a hearing on the property on September 18, 2006, during which he testified that the legal documents and paperwork were going to be used in a civil rights action. The hearing officer determined that grievances, medical records, monthly statements, and a variety of other reports could not be part of a civil suit because Plaintiff did not have a draft pleading with legal paperwork. Plaintiff was given 30 days to send the items home. (Plaintiff's Exhibit C.) Plaintiff claims that he required the grievances because, prior to *Jones v. Bock*, 549 U.S. 199 (2007), he was required to attach copies of his grievances to his complaint in order to prove exhaustion. Therefore, the confiscation of these documents impeded his ability to file a civil rights action and violated his right of access to the courts. Plaintiff claims that his attempts to have his property sent home were repeatedly thwarted as his requests were ignored or refused.

Plaintiff contends that he continued in his attempts to have his legal property sent home until Defendant Johnson falsified a misconduct against him, which resulted in him being placed in administrative segregation for over 11 months. Plaintiff was eventually transferred from MBP to LMF, at which point his winter coat was confiscated. Plaintiff was given a hearing on January 29, 2008, where Plaintiff was unable to prove that he possessed the coat prior to the institution of Policy Directive 04.07.112. The policy stated that if the coat was purchased prior to November 15, 2004, he could legally possess it. Plaintiff states that his receipt for the coat was destroyed in September 10, 2006, so that he was unable to present it as evidence.

Plaintiff alleges that in November of 2006, his pain medication was discontinued because it was going to be replaced with a new formula. After 21 days of being in chronic pain, Plaintiff filed a grievance. Plaintiff claims to suffer from a condition in which his toes are "curling up upon themselves and turning up-side-down." Plaintiff also states that he is a diabetic, so that ay foot problems are serious and can result in a need to have his feet amputated. Plaintiff states that Defendants Hill, Miles Engelsjerd, Fontera, Kimsell, Jordan, Hofbauer, and Alexander denied him medications. After being denied treatment for 65 days, Plaintiff was seen by an outside doctor and x-rays were ordered. However, Plaintiff never received any x-rays or medication.

Plaintiff states that he was transferred to MBP on January 11, 2008, and that Defendant Guinn removed him from all medications. Plaintiff claims that between April 8, 2008, and April 22, 2008, after being placed on administrative segregation, he was denied medication for his chronic pain because Defendant Napels told medical staff to discontinue the medication. Plaintiff filed a grievance and was reviewed on the grievance by Defendant Jordan, who told Plaintiff that custody staff had caught him attempting to sell his medications. Plaintiff challenged Defendant

Jordan to show him a misconduct report on the issue, but no misconduct report was ever produced. Plaintiff also states that his medically detailed shoes were taken from him on April 8, 2008. Plaintiff's shoes were to treat his diabetic neuropathy. Plaintiff filed a grievance and was given another medical pair of shoes with a soft front and pair of insoles. Plaintiff complained that these shoes were not adequate and finally received a pair of medical shoes with the proper support on August 20, 2008. Plaintiff claims to have suffered physical pain and emotional distress during the time he was without his medical shoes.

On May 2-4, 2008, Plaintiff was given another inmate's medication, which caused him stomach pain and sickness. The medication was given to Plaintiff by Defendant Kemsel three days in a row. Plaintiff states that he only knew that the medication was incorrect because he began to suffer stomach pains that were not his usual constipation pains. Plaintiff asked to see Dr. Jenkins, but his requests were refused. Plaintiff states that he was repeatedly refused medical attention, leaving him to suffer headaches. Plaintiff requested that Defendant Seably examine an open wound on his ankle, but Defendant Seably told Plaintiff that she was not doing anything for him.

While Plaintiff was confined in the Brooks Center at MBP he was denied a shower for five days, as well as toothpaste, by Defendant Montigomery. On March 3, 2009, Plaintiff wrote a grievance on this issue. Defendant Montigomery subsequently retaliated against Plaintiff by accusing him of threatening his life. Plaintiff was then placed in administrative segregation. Plaintiff claims that Defendants' conduct violated his rights under the First, Eighth and Fourteenth Amendments.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that some of Plaintiff's claims are barred by the statute of limitations. This court may, on its own motion, apply the statute of limitations to a § 1983 claim by a prisoner. *See Hardin v. Straub*, 490 U.S. 536, 109 S. Ct. 1998 (1989); *Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995); *Redd v. Gilless*, 857 F. Supp. 601, 605 (W.D. Tenn. 1994). The Sixth Circuit has held that sua sponte dismissal is appropriate under § 1915(e)(2) when there is an affirmative defense such as the statute of limitations and a claim is therefore frivolous on its face. *Fraley v. Ohio Gallia Cty.*, No. 97-3564, 1998 WL 789385, at *1 (6th Cir. Oct. 30, 1998); *Day v. E.I. Dupont de Nemours and Co.*, No. 97-6233, 1998 WL 669939, at *1 (6th Cir. Sept. 17, 1998). Federal courts apply state personal injury statutes of limitations to claims brought under §1983. *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S. Ct. 1938, 1947 (1985); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 180-181 (6th Cir. 1990). For civil rights suits filed in Michigan under §1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(8); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.) (per curiam), *cert. denied*, 479 U.S. 923, 107 S. Ct. 330 (1986); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, *1 (6th Cir. Feb. 2, 1999). Although state tolling provisions must be applied to § 1983 suits brought by prisoners, *Hardin*, 490 U.S. at 544; *Jones v. City of Hamtrack*, 905 F.2d 908, 909 (6th Cir. 1990), *cert. denied*, 498 U.S. 903 (1990), Michigan's tolling provision for imprisoned persons does not provide plaintiff any additional benefit in this case. *See* MICH. COMP. LAWS § 600.5851(9).

Plaintiff claims that his legal mail was illegally destroyed on October 17, 2005, following a hearing which determined the documents to be contraband. The hearing was held on

September 30, 2005, and the decision to have the documents destroyed was issued on October 3, 2005. (Plaintiff's Exhibits A and B.) Decisions made in the prison hearings division are non-grievable. Policy Directive 03.02.130, ¶ F-1. Instead, plaintiff "shall file a motion or application for rehearing in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." *See* MICH. COMP. LAWS § 791.255(1). The rehearing request must be made within thirty days after the final decision or order is issued. MICH. COMP. LAWS § 791.254(3). It does not appear as if Plaintiff ever filed a rehearing request. Therefore, the statute of limitations would have begun running on November 4, 2005, thirty days after the hearing officer's disposition. Consequently, Plaintiff had three years from that date, or until November 4, 2008, to file this lawsuit. Plaintiff's complaint was filed in this court on January 20, 2010. Therefore, it is clear that Plaintiff's claim regarding the confiscation of legal mail is barred by the applicable statute of limitations.

In addition, Plaintiff claims that the illegal search and seizure of property from his cell occurred on September 10, 2006. A hearing occurred regarding the property on September 18, 2006, and Plaintiff states that he requested a rehearing, but was never supplied with the proper request form. Plaintiff filed a grievance on this issue on October 20, 2006. The court notes that the grievance process must be resolved within 90 days. MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ V (effective November 1, 2000). Therefore, the statute of limitations would have begun running on this issue on January 18, 2007. Consequently, Plaintiff had three years from that date, or until January 18, 2010, to file this lawsuit. Plaintiff's complaint was filed in this court on January 20, 2010. Therefore, Plaintiff's claim regarding the illegal search and seizure of property from his cell is barred by the applicable statute of limitations.

Moreover, Plaintiff received a hearing regarding the seizure of property from his cell. A review of the complaint, as well as the attached documents, establish that Plaintiff received due process of law with regard to this seizure. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *Zinermon v. Burch*, 494 U.S. 113, 127-28, 110 S. Ct. 975, 984 (1990). The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9, 100 S. Ct. 553, 558, n. 9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125, 110 S. Ct. at 983 (1990) (emphasis in original).

Moreover, the hearing officer's conclusion that certain property was not allowable excess legal property was supported by the record. In the reasons for finding, the Hearing Officer stated:

> The following property is not considered to be allowable excess legal as it does not reasonably relate to pending litigation.
>
> 1. Three envelopes of materials that the prisoner admittedly had not sorted as he got "tired" of sorting his papers.
>
> 2. The materials discarded in the trash on the instructions of the prisoner during the hearing.

3. School report.

4. Disbursements. Prisoner claimed that these aren't "legal" but some were legal, but he got things all confused when he had to repack his property.

5. LMF grievances that the prisoner indicated he no longer needs for anything.

6. Blank institutional forms.

7. Envelopes that the prisoner initially classified as being part of his "Attorney General's Lawsuit" and then later classified as being part of his 2004 Civil Rights Complaint. Basically these envelopes contained the prisoner's institutional file and covered documents pre-dating and post-dating his racial complaint at URF against two officers. On their face, these envelopes had nothing to do with a civil rights complaint. The files contained monthly statements, medical records, grievances, and variety of reports. There were no draft pleadings nor were there any documents to suggest that these materials had anything to do with the Civil Rights or any proposed lawsuit. It was apparent during the hearing that the prisoner attempted to keep his institutional records by claiming they were legal when they were not being used for any pending litigation. Prisoner should have had his materials organized by the time of the hearing. They were not. He was given additional time to sort his materials and after he had sorted his materials, he attempted to bring these materials back to his cell. When that was not permitted, he gave conflicting statements during the hearing as to the purpose of these materials. Prisoner did not establish that these materials are reasonably necessary for any pending litigation.

(Plaintiff's Exhibit C, p. 18.)

It is clear that Plaintiff received due process of law, and that he cannot support any claim that his constitutional rights were violated during the hearing. In this case, Plaintiff was given the opportunity to convince an unbiased decision maker that he required the excess property in order to pursue pending litigation. Plaintiff failed to make such a show with regard to some of the property, however, Plaintiff was allowed to keep much of the property at issue. (Plaintiff's Exhibit C, pp. 17-18.) Therefore, the court concludes that Plaintiff has failed to show that his due process rights were denied by the September 10, 2006, seizure of property.

Nor does it appear as if the September 10, 2006, seizure of property violated Plaintiff's right of access to the courts. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton*

*v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993). Plaintiff fails to allege any facts showing that he suffered such an injury.

Nor has Plaintiff shown that he was denied medical care in violation of the Eighth Amendment. As noted below, Plaintiff was seen by medical service providers on numerous occasions for his maladies and that Plaintiff disagrees with the specific care he has been given. Plaintiff claims that the discontinuation of his pain medication violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate

must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results

in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

In this case, Plaintiff attaches a copy of the step I grievance MBP 08 02 00192 12D1 to his complaint as Exhibit H, in which Plaintiff complained that Defendant Guinn stopped his pain medication without a doctor's order. In the step I response, Defendant Kimsel notes that Defendant Guinn is a medical practitioner with both the qualifications and authority to diagnose, treat, and prescribe and that Defendant Guinn was being supervised by a physician. The step III response, denying Plaintiff's grievance appeal is signed by J. Armstrong. This response states that the Plaintiff's medical record had been reviewed and that Plaintiff's disagreement with the Medical Provider's decision did not make it wrong. (Plaintiff's Exhibit H.)

Plaintiff also attaches a copy of grievance number MBP 08 04 00729 12F1, in which he claims that custody staff directed health care staff to discontinue Plaintiff's medications. The step

I response states that Plaintiff's grievance states that his medications were discontinued by health care staff because he was caught selling them and that Plaintiff has since been medications for his maladies. (Plaintiff's Exhibit I.) The court concludes that in light of the facts alleged in his complaint, as well as in the exhibits, Plaintiff's allegations concerning the denial of pain medications do not rise to the level of an Eighth Amendment violation.

Plaintiff also states that the deprivation of his medically detailed shoes violated his Eighth Amendment rights. According to the response to Plaintiff's May 23, 2008, step I grievance, Plaintiff did have an accommodation for athletic shoes and a pair with a "soft front" would be sought. In addition, Plaintiff would be given his insoles. This response was dated June 5, 2008. The step III response indicated that Plaintiff was given athletic shoes with the softest front available on August 20, 2008, which he accepted, and that his insoles were on order and Plaintiff would receive them as soon as they arrived. (Plaintiff's Exhibit J.) The court concludes that the facts alleged by Plaintiff do not support a finding that Defendants acted with deliberate indifference with regard to his medical detail shoes. Therefore, this claim is properly dismissed.

Plaintiff further asserts that on May 2-4, 2008, Plaintiff was given another inmate's medication by Defendant Kemsel, which caused him stomach pain and sickness. Plaintiff states that he only knew that the medication was incorrect because he began to suffer stomach pains that were not his usual constipation pains. Plaintiff's requests to see Dr. Jenkins were refused. Plaintiff states that he was repeatedly refused medical attention, leaving him to suffer headaches. According to the step I grievance response on this issue, the medication log showed that Plaintiff received Clinoril and Tylenol in error on May 2, 3, and 4, 2008. The errors were documented and a physician was consulted, who determined that no follow-up treatment was indicated. The response further states

that the stomach problems Plaintiff was referring to were related to his chronic constipation, and that he would be scheduled to see a Medical Service Provider regarding this issue because the current treatment of Metamucil two times a day was ineffective. (Plaintiff's Exhibit K.) The court concludes that in light of the facts alleged in his complaint, as well as in the exhibits, Plaintiff's allegations concerning the erroneous medication administration in May of 2008 do not rise to the level of an Eighth Amendment violation.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: May 6, 2010                   /s/ Robert Holmes Bell
                                                    ROBERT HOLMES BELL
                                                    UNITED STATES DISTRICT JUDGE